IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BHUPENDRA GHANDI and A&Y FAMILYGROUP INC., <br><br> Plaintiffs, <br><br> v. <br><br> CRAIG J. EHRLICH, et al., <br><br> Defendants. | CIVIL ACTION FILE <br><br> NO. 1:19-cv-03511-SDG |

## DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL

Pursuant Local Rule 83.1(C), Defendants move this Court to disqualify attorneys for Plaintiffs, HASSAN H. ELKHALIL and CHARLOTTE H. CARTER (hereafter "Plaintiffs' Counsel") because Plaintiffs' Counsel are necessary and material witness to facts germane to the claims and defenses in this litigation.

## I.    INTRODUCTION AND SUMMARY

As Defendants have explained in greater detail in their Brief in Support of Defendants' Motion to Dismiss (Doc. 10-1), which is incorporate by reference, Plaintiffs' claim that Defendants' filing of lawsuits under the Americans with Disability Act ("ADA") constituted criminal racketeering under the Racketeering

1

and Corrupt Practices Act, 18 U.S.C. §§ 1961 and 1962 (Doc. 1 at ¶1), is unsupported by both fact and law.

The crux of Plaintiffs' Complaint is that "Defendants' lawsuit complaints [sic] set forth false statements and assertions without which they would be unable to prosecute any of the ADA cases filed." (Doc. 1 at ¶31).  Plaintiffs allege that "[t]he lawsuits initiated by Defendants are part of a criminal enterprise that lacks merit, are frivolous and vexatious based on false assertion regarding visits to establishments, encountered barriers alleged discrimination and intent to return." (Doc. 1 ¶30).

Although the Complaint should be dismissed prior to discovery and prior to introduction of any evidence,[1] Defendants file this Motion to Disqualify because, were the case ever to survive dismissal, Plaintiffs' Counsel would have to be disqualified.  Defendants understand fully that motions to disqualify counsel are disfavored by courts and that they are seldom granted, and that this Motion may be mooted by the granting of the Motion to Dismiss.  Nevertheless, because the

---

[1] As explained in the Brief in Support of the Motion to Dismiss, the Complaint is frivolous and should be dismissed because (a) RICO claims may not, as a matter of law, be predicated on the filing of lawsuits; (b) the RICO claims are barred by res judicata because the ADA Cases are between the same parties, raise the same issues, and have been finally adjudicated; and (c) the Complaint does not come close to meeting the pleading requirements of *Iqbal, Twombley* or Rule 9(b).  (*See generally* Doc. 10-1).

Motion to Disqualify should so clearly be granted, it is appropriate for Plaintiffs to file it at this time: Plaintiffs' Counsel in this case were counsel to the defendants in the ADA Cases, and hence are witnesses to the alleged representations made in those cases by Defendants Craig J. Ehrlich, Ehrlich & Schapiro, LLC and Law Offices of Craig J. Ehrlich, LLC (the "Lawyer Defendants"). As such, they must be disqualified.

## II.    FACTUAL BACKGROUND

As examples of Defendants' allegedly wrongful behavior, Plaintiffs' Complaint cites two cases filed by Defendants in the Northern District: *Yvonne Brown v. N.N.U, Inc. et al.* (1:17-cv-03560-RWS) and *Dakota Holt v. Bhupendra Ghandi* (1:19-cv-00692-MLB) (Doc. 1 at ¶33-35) (collectively "the ADA Cases"). A brief summary of the ADA Cases shows that Plaintiffs' Counsel are material witnesses to the alleged misrepresentations by the Lawyer Defendants.

### A.    *Dakota Holt v. Bhupendra Ghandi*

Paragraph 34 of Plaintiffs' Complaint references the adjudicated matter of *Holt v. Ghandi*, filed on February 8, 2019. (Doc. 1 at ¶ 34), alleging that "Plaintiff Bhendra Ghandi filed a Motion to Dismiss and Motion to Deem Plaintiff a Vexatious Litigant and Motion for Prefiling Order Prohibiting Filing New Litigation without Leave of Court and For Monetary Sanctions." (Doc. 1 at ¶ 34).

These motions were prepared and filed by Plaintiffs' present counsel. (Doc. 1-1, Exhibit M, pp. 112-159).

Paragraph 34 of the Complaint further alleges that "Defendant Craig Ehrlich and the Law Offices of Craig J. Ehrlich, LLC demanded settlement via aggressive and harassing emails and ultimately dismissed the case with prejudice." (Doc. 1 at ¶ 34).  This paragraph references emails from Ehrlich to Plaintiffs' counsel, found at Exhibit N to the Complaint, at Doc. 1-1 at pp. 174-175. An examination of those emails reveals that both Hassan H. Elkhalil and Charlotte H. Carter had telephone conversations with Defendant Craig J. Ehrlich regarding the resolution of the *Ghandi* matter and facts regarding Plaintiffs' allegations. (Doc. 1-1 at Exhibit N, pp. 181-183).

On March 20, 2019, Craig Ehrlich and Plaintiffs' Counsel exchanged an additional series of emails documenting Ehrlich's inspection of the *Ghandi* property, and his confirmation that Ghandi had undertaken repairs and modifications to the subject property to bring it into compliance with the 1991 ADAAG Standards. (Doc. 1-1 at Exhibit N, pp. 181-183). In a subsequent email exchange, Ehrlich and Plaintiffs' Counsel agreed that in light of the modifications to the property, a stipulation to dismiss was appropriate. (Doc. 1-1 at Exhibit N, pp.

181-183).  On April 4, 2019, a *Joint Stipulation of Dismissal with Prejudice* was entered by Ehrlich and Plaintiffs' counsel. (Doc. 1-1 Exhibit N, pp. 185-187).

Neither Ehrlich nor any of the Defendants in this case had direct contact with Bhupendra Ghandi. All communications in that case were by and between Ehrlich and Plaintiffs' counsel. Thus, all of these alleged misrepresentations in the underlying *Ghandi* matter were made to Plaintiffs' Counsel. According to Plaintiffs' own (concededly impausible) allegations, it would be Plaintiffs' counsel that were misled, Plaintiffs' Counsel that reasonably relied on the alleged misrepresentations to their client's detriment, and Plaintiffs' Counsel that were pressured to settle that matter, thus making them indispensable witnesses in the *Ghandi* matter requiring that they be deposed and testify at trial.  Plaintiffs' Counsel also should have conducted an investigation into the matter, and facts resulting from that investigation would also be discoverable, requiring Plaintiffs' Counsel to testify in both depositions and at trial.

   **B.  *Yvonne Brown v. N.N.U., Inc. and A & Y Family Group, Inc.***

Paragraph 33 of Plaintiffs' Complaint references the adjudicated matter of *Yvonne Brown v. N.N.U., Inc. and A & Y Family Group, Inc.*, filed on September 14, 2017. (Doc. 1 at ¶ 33). *Brown v. N.N.U.* was resolved via a fully executed Consent Decree which was subsequently approved by the Court on November 9,

2017.  Under the Consent Decree, the ADA case Defendants had until November 7, 2019 to complete the repairs and modifications set forth in Exhibit "1" to the Consent Decree. *See Fully Executed Consent Decree*, attached as Exhibit A. Paragraph 33 of the Complaint alleged, *inter alia*, "[t]o date, there has been no follow up as to A&Y Group, Inc.'s compliance with repairs and/or modifications by any named Defendants. (Doc. 1 at ¶ 33).

Paragraph 36 of Plaintiffs' Complaint alleges, "Upon information and belief, Plaintiff alleges Defendants allegations made in the prior litigation were false." (Doc. 1 at ¶ 36).  Plaintiffs' Complaint also alleges Defendants filed "[f]alse pleadings, declarations and correspondence with the court and false discovery responses." (Doc. 1 at ¶ 44 and 45). While no declarations or discovery responses were served or exchanged in the *Brown v. N.N.U.* matter, the same is true of Plaintiffs' Counsel: each of the alleged misrepresentations by Defendants would have been made to Plaintiffs' Counsel directly. In the unlikely event this case is not dismissed, they are indispensable witnesses that must be deposed and testify at trial.

## III.   <u>ARGUMENT AND CITATIONS OF AUTHORITY</u>

### A.  **Legal Standards**

Northern District of Georgia Local Rule 83.1(C), Standard of Professional

Conduct, states, in relevant part:

> All lawyers practicing before this Court shall be governed by and
> shall comply with the specific rules of practice adopted by this Court
> and, unless otherwise provided, with the Georgia Rules of
> Professional Conduct contained in the Rules and Regulations of the
> State Bar of Georgia and with the decisions of this Court interpreting
> these rules and standards.

The Georgia Bar Rules of Professional Conduct, Rule 3.7 entitled "Lawyer

as Witness" states, in relevant part:

> A lawyer shall not act as advocate at a trial in which the lawyer is
> likely to be a necessary witness except where: 1) the testimony relates
> to an uncontested issue; 2) the testimony relates to the nature and
> value of legal services rendered in the case; or 3) disqualification of
> the lawyer would work substantial hardship on the client.

The comments under Rule 3.7 are particularly instructive in light of the facts

of this case:

> [1] Combining the roles of advocate and witness can prejudice the
> opposing party and can involve a conflict of interest between the
> lawyer and client.

> [2] The opposing party has proper objection where the combination of
> roles may prejudice that party's rights in the litigation. A witness is
> required to testify on the basis of personal knowledge, while an
> advocate is expected to explain and comment on evidence given by
> others. It may not be clear whether a statement by an advocate-witness
> should be taken as proof or as an analysis of the proof.

The significant likelihood of juror confusion due to Plaintiffs' Counsels'

testimony at trial supports their disqualification:

7

> If a jury trial is requested, "there is great potential for juror confusion about which role the lawyer is serving during trial." *Clough v. Richelo*, 274 Ga. App. 129, 137, 616 S.E.2d 888, 895 (2005). " 'A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear [to the factfinder] whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.' " *Id.* (alteration in original) (quoting Ga. R. Prof. Conduct 3.7, Cmt. (2)). As a result, "[i]t has been recognized that, if an attorney will appear at trial as a 'necessary witness' under Rule 3.7(a), disqualification of that attorney as trial counsel is appropriate." *McLaughlin*, 295 Ga. at 611, 761 S.E.2d at 292.

*Dunn v. Stewart*, No. 4:17-CV-00134-HLM, 2017 WL 11151583, at *2 (N.D. Ga. Sept. 21, 2017).

Moreover, where it is determined early in the proceedings that a lawyer is likely to assume the dual role of both witness and advocate, a court's interest in efficient administration of the proceedings favors disqualification:

> Finally, it is conceivable that Mr. Price could be called as a witness. . . Granted, that event may not occur, but if it does, it could be detrimental to the disposition of this case. If Mr. Price elects (or is forced) to take the stand, then he would be acting as both an advocate and a witness. That dual role is not allowed under Rule 3.7(a). *See also United States v. Arrington*, 867 F.2d 122, 126 (2d Cir. 1989) ("Once a jury sees an attorney take an oath on the witness stand, it may accord testimonial weight to that which he has argued, or it may place undue weight on the testimony of an officer of the court." (citation omitted)). . . It is obviously better for the fair administration of justice if this potential problem can be obviated now.

*United States v. Smith*, No. 4:05-CR-57-8-HLM, 2006 WL 8429192, at *3 (N.D. Ga. Jan. 27, 2006).

"Rule 3.7 requires disqualification of an attorney if an attorney is a necessary witness to an action. A lawyer is a 'necessary' witness under Rule 3.7 if his or her testimony is material and unobtainable elsewhere." *Rosen v. Protective Life Ins. Co.,* No. 1:09 CV 03620 WSD, 2010 WL 2014657, at *13 (N.D. Ga. May 20, 2010) (citation omitted).

### b.   Plaintiffs' Counsel are Necessary Witnesses and Must Be Disqualified

Here, since all of the alleged misrepresentations made by Defendants to Plaintiffs were made to Plaintiffs' Counsel, and not to Plaintiffs themselves, the testimony to be elicited from Plaintiffs' Counsel cannot be obtained elsewhere.

In *Hutchinson v. Spanierman*, 190 F.3d 815, 828 (7th Cir. 1999), the Seventh Circuit upheld the disqualification of a plaintiffs' attorney in a strikingly similar case involving an attorney who had represented one of the parties in litigation that became the subject matter of the subsequent lawsuit.   The plaintiff in the *Hutchinson* matter was required to obtain other counsel in an attorney malpractice and RICO action against because his attorney was a necessary witness under Rule 3.7 of the Indiana Rules of Professional Conduct.[2]   The district court

---

[2] Rule 3.7 of the Indiana Rules of Professional Conduct are identical to Rule 3.7 of the Georgia Rules of Professional Conduct: "*Rule 3.7. Lawyer as Witness*: (a) A lawyer shall not act as

disqualified Hutchinson's attorney from the RICO action against the defendant attorneys because the attorney was a material participant in telephone calls with the defendant attorneys. *Id.* This mirrors the fact pattern now before the Court.

In *Stewart v. Bank of America, N.A.*, 203 F.R.D. 585, 586-87 (M.D. Ga. 2001), a plaintiff's counsel was disqualified as a necessary witness concerning contested material facts. In *Stewart,* the attorneys were the sole negotiators for plaintiffs at foreclosure sale. The court held the attorneys' testimony was essential in establishing whether a valid foreclosure sale actually took place. "Any statements they would make at trial regarding the foreclosure or any subsequent, related events would completely confuse a jury because they would attribute too much, or possibly too little, weight to the attorneys' testimony." *Stewart*, 203 F.R.D. at 587.

Plaintiffs' Complaint action alleges the Defendants, through the Defendant Attorneys, submitted false claims about the extent of Defendants' disability, alleged visits to the business establishments being sued, false claims regarding encountering barriers, false claims having suffered difficulty, discomfort, or

---

advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client. (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." *See* https://www.in.gov/judiciary/rules/prof_conduct/#_Toc461714680.

embarrassment and false claims regarding an intent to return to the business

establishment in an effort to establish standing.  Plaintiffs' Counsel are witnesses

to the alleged misrepresentations made by Defendants. It would be, and can only

be, Plaintiffs' Counsel that reasonably relied upon these misrepresentations.

Paragraph 34 of the Complaint alleged Defendant Craig Ehrlich and the Law

Offices of Craig J. Ehrlich, LLC "demanded settlement via aggressive and

harassing emails." (Doc. 1 at ¶34).  The Complaint attached as Exhibit N, emails

exchanged between Plaintiffs' Counsel and Craig Ehrlich. These emails reference a

number of telephone calls between Plaintiffs' Counsel and Craig Ehrlich. These

calls are relevant to a number of issues identified in the Complaint including, but

not limited to: whether the ADA violations are "false" (Doc. 1 at  ¶7), whether

Plaintiffs were pressured to settle because it is cheaper to settle than to litigate the

merits of the action (Doc. 1 at ¶24) and whether Defendants file their claims for

their own greed and financial gain without concern that the properties are remedied

in ADA Compliance (Doc. 1 at ¶ 26). It was Plaintiffs' Counsel, not Plaintiffs

themselves, who were the sole parties to these telephone conversations that are

purportedly illicit, and only Plaintiffs' Counsel can testify to the contents of those

conversations. It was Plaintiffs' Counsel, not Plaintiffs themselves, who received

these purportedly harassing settlement demands, and only Plaintiffs' Counsel can

testify to the complexion of those demands and how a determination was made that it was more prudent to settle and modify the properties at issue rather than litigate the cases on the merits.  There was no discovery exchanged in either case; it is only Plaintiffs' Counsel who can testify to the evidence in their files that resulted in those determinations and only Plaintiffs' Counsel who can testify with regard to the issue of reasonable reliance, an indispensable component of their claims.

Assuming that this case survives dismissal, Plaintiffs' Counsel are not only necessary witnesses, they are indispensable witnesses to both Plaintiffs' allegations and Defendants' defense of those claims. As such, they are improperly assuming the roles of both witnesses and advocates, and must be disqualified.

## IV.   CONCLUSION

That Plaintiffs' Counsel are material and necessary witnesses to the allegations in the Complaint underscores the reasons for dismissing the case in the first place.  When a litigant or a lawyer makes allegedly false representations in a lawsuit, the forum for the adjudication of the falsity of those representations is in the lawsuit itself, not in a separate RICO action filed after the underlying lawsuit has been finally resolved.  However, if the case is not dismissed, Plaintiffs' Counsel may not represent Plaintiffs in this case because they are material and necessary witnesses to the allegations. *See Hutchinson,* 190 F.3d at 828 ("a lawyer

shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness"); *Stewart,* 203 F.R.D. at 587 (disqualifying plaintiff's counsel as "necessary, material eyewitnesses to the several transactions that are the subject matter of th[e] case").

Respectfully submitted,

This 27th day of September, 2019.

/s/Bruce P. Brown
Bruce P. Brown
*Counsel for Defendants*
Georgia Bar No. 064460
BRUCE P. BROWN LAW LLC
1123 Zonolite Road NE, Suite 6
Atlanta, GA 30306
Phone: (404) 881-0700
bbrown@brucepbrownlaw.com

13

## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has

been prepared in accordance with the font type and margin requirements of LR 5.1,

using font type of Times New Roman and a point size of 14.

*/s/ Bruce P. Brown*
Bruce P. Brown

## **CERTIFICATE OF SERVICE**

I have this day served counsel of record with a copy of the foregoing Motion to Disqualify via the Court's electronic filing system.

This 27th day of September, 2019.


/s/Bruce P. Brown
Bruce P. Brown

E
X
H
I
B
I
T

A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| YVONNE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | |
| | ) | FILE No. 1:17-cv-03560-RWS |
| N.N.U., INC. and | ) | |
| A & Y FAMILY GROUP, INC, | ) | |
| | ) | |
| Defendants. | ) | |

## CONSENT DECREE

This Consent Decree (this "Agreement") is made and entered into by and between Yvonne Brown ("Plaintiff") on the one hand, and N.N.U., Inc. ("NNU") and A&Y Family Group, Inc. ("A&Y") on the other (together, NNU and A&Y shall be referenced as "Defendants,") (Plaintiff and Defendants shall be referenced as the "Parties"). This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences, and causes of action with respect to the dispute described below.

## PREAMBLE

**WHEREAS**, on September 14, 2017, Plaintiff asserted claims for injunctive relief against Defendants, based upon purported violations of Title III of the Americans with Disabilities Act, 42 U.S.C. 12181, *et seq.* ("ADA") and related

1

claims for relief respecting the real property located at or about 3195 Austell Road, Marietta, Georgia 30008; (the structure situated upon such real property shall be referenced as the "Facility" and the real property such structure is situated upon shall be referenced herein as the "Property"); and

WHEREAS, the Parties desire to compromise and fully and finally resolve and settle all actual and potential claims or litigation between them, to avoid the uncertainty, time and expense that would accompany such litigation; and

WHEREAS, the Parties have agreed to enter into this Agreement pursuant to which each and every claim and/or cause of action asserted or that could have been asserted by Plaintiff against Defendants shall be fully, forever, and finally released;

NOW, THEREFORE, in consideration of the covenants and mutual promises and agreements contained herein, and other valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.    **Attorney's Fees and Costs**

1.1    The Parties shall execute this Agreement and Plaintiff's Counsel, Ehrlich & Schapiro, LLC, shall prepare a Joint Stipulation to Approve Consent Decree and Dismiss with Prejudice ("Joint Stipulation") to be distributed to all Parties for execution. Defendants agree to pay to Plaintiff's Counsel, within fourteen (14) days of the entry by the Court of the Order Approving Consent

2

Decree and Dismissal of Defendants with Prejudice (the "Order"), attorney's fees and costs of litigation in the amount of $4,250.00 (Four Thousand Two Hundred Fifty Dollars and No Cents).  Said payment shall be made payable to "Ehrlich & Schapiro, LLC IOLTA" and delivered to Ehrlich & Schapiro, LLC, 1123 Zonolite Road, N.E., Suite 8-B, Atlanta, Georgia 30306.

      1.2    Upon delivery to Plaintiff's Counsel of the fully executed Agreement, Plaintiff shall promptly file the Joint Stipulation to Approve Consent Decree and to Dismiss with Prejudice, attaching a copy of the fully executed Agreement and proposed order of dismissal with prejudice.

      1.3    Plaintiff agrees to take any and all additional steps required to obtain dismissal of the Action as set forth above. Except as set forth herein, each Party shall be responsible for payment of her or its own litigation expenses, costs and attorneys' fees.

      1.4    Plaintiff and Plaintiff's Counsel acknowledge and agree that they are solely and entirely responsible for the payment and discharge of all federal, state, and local taxes, if any, that may, at any time, be found to be due upon or as a result of the Payment hereunder. Plaintiff and Plaintiff's Counsel, and each of them, expressly acknowledge that Defendants have not made any representations regarding the tax consequences of any Payment received pursuant to this

3

Agreement.

1.5   The Parties agree that a condition precedent for the validity of this Agreement is the Court's retaining jurisdiction to enforce the Agreement.

## 2.   **Alterations or Modifications to the Facilities**

2.1   The Parties hereto acknowledge and stipulate that Defendants shall modify or alter the items expressly identified by and in the manner specified in "Exhibit 1." The repairs or modifications identified in "Exhibit 1" shall be completed in all respects no later than twenty-four (24) months from the entry of the Order.  The time period for completion by Defendants shall be subject to acts of God, force majeure, or events beyond the control of Defendants, such as inability to obtain building or zoning permits, failure of the city/county or state inspectors to make inspections, city/county/state work on adjacent roadways/sidewalks which delay implementation of this Agreement, contractor defaults or work stoppages. In the event of such unforeseen circumstances, the time period for completion of the alterations or modifications in "Exhibit 1" shall be extended by the number of days reasonably attributable to such delay-causing event as long as Defendants provide notice to Plaintiff's Counsel prior to the original completion date set forth above.  Either NNU or A&Y may provide this notice.

4

2.2    Upon completion of the alterations and modifications set forth in "Exhibit 1," Defendants shall provide written notice by certified or registered mail, or via electronic mail, to Plaintiff's Counsel.  Either NNU or A&Y may provide this notice.

2.3    If the modifications or alterations described in "Exhibit 1" conflict with Georgia law, building construction standards, county or city regulations or codes, or any other statute, act, law, rule, regulation, code, standard, or state or local governing body whatsoever, Defendants shall attempt to identify and implement a reasonable alternative solution or variance should a readily achievable one exist.  If any such alternative solution is applied by Defendants, Defendants agree to notify Plaintiff's Counsel of the same prior to initiating any such alternative solution.  It is a material provision of this Agreement that Plaintiff shall approve any alternative solution(s) prior to its (or their) implementation, and further, Plaintiff's approval of any alternative solution(s) proposed by either Defendant shall not be unreasonably withheld.

2.4    The Parties stipulate that after Plaintiff's Counsel receives notice of the completion of the alterations or modifications described in "Exhibit 1" or after the elapse of the twenty-four (24) month time period set forth in Paragraph 2.1 above, whichever is sooner, Plaintiff may inspect the Facility to ensure that

5

Defendants have completed the modifications or alternations described in "Exhibit 1" Defendants shall provide Plaintiff or her designated representative reasonable access to the Facility to verify completion of the work described in "Exhibit 1."

2.5   If an inspection contemplated herein reveals that any of the alterations or modifications described in "Exhibit 1" have been performed in a manner that does not materially comply with "Exhibit 1," Plaintiff shall have the right to enforce this Agreement pursuant to Paragraph 3, below.

2.6   It is agreed by the Parties that upon all of the modifications being completed as set forth in "Exhibit 1," the Facility and Property will be deemed fully compliant with the ADA pursuant to the readily achievable standard.

3.   **Enforcement Provisions**

If Plaintiff contends that an inspection performed pursuant to Paragraph 2.4 of this Agreement reveals that any of the alterations and/or modifications described in "Exhibit 1" have been performed in a manner that does not materially comply with "Exhibit 1" Plaintiff shall provide notice to Defendants via certified mail at the address listed in Paragraph 6.1 of this Agreement, below.  Defendants shall have one hundred and twenty (120) days after receipt of such notice to cure any alleged non-compliant alterations and modifications. If Defendants do not cure the alleged non-compliant alterations or modifications, Plaintiff shall have the right to

6

move this Court to enforce this agreement.

4.     **Compromise**

The Parties agree and acknowledge that this Agreement is the result of a compromise and shall never be construed as an admission of any liability, wrongdoing, or responsibility on the part of the Released Parties (as defined in paragraph 5.1 below). Defendants expressly deny any such liability, wrongdoing, or responsibility.

5.     **Release Given By Plaintiff in Favor of Defendants**

5.1     In exchange for the good and valuable consideration set forth herein, Plaintiff and her respective agents, members, successors, assigns, parent entities, subsidiary entities, heirs, officers, predecessors, directors, affiliated persons and/or entities, and anyone claiming by or through them (collectively, the "Releasing Parties"), hereby fully and finally release, acquit, satisfy, and discharge Defendants, and each of their respective agents, predecessors, successors, assigns, heirs, parent entities, subsidiary entities, officers, directors, shareholders, employees, attorneys, affiliated persons or entities, and all current and former tenants or lessees of the Facility (collectively, the "Released Parties"), of and from any and all legal or equitable claims, demands, liabilities, debts, judgments, damages, expenses, actions, or causes of action arising under Title III of the

7

ADA and/or any other federal, state, or local law governing access features and policies for persons with disabilities at public accommodations whether before any federal, state, or local agency, court of law, or in any other forum, and any and all claims that could have been alleged in the Action regarding the Facility. This release also includes all claims for attorney's fees and costs, expert fees and costs, or any other fee or cost incurred to date, with the exception of (a) the attorney's fees and costs set forth in Paragraph 1.1, above, and (b) any attorney's fees and costs resulting from any future action taken by any of the Parties to enforce the terms of this Agreement.

5.2     As a material inducement for Defendants to enter into this Agreement, Plaintiff represents and warrants that she is not aware of any pending tort, contract, or other legal claims against Defendants, other than the specific claims brought in this Action under Title III of the ADA, which are released under this Agreement.

5.3     Plaintiff represents and warrants that no portion of any of the matters released by this Agreement and no portion of any recovery or settlement to which they might be entitled have been assigned or transferred to any other person, firm, or corporation not a Party to this Agreement, in any manner, including by way of subrogation or operation of law or otherwise.

6.     **Notice**

8

6.1   Unless otherwise provided in this Agreement or by law, all notices or other communications required or permitted by this Agreement or by law to be served on or delivered to any Party to this Agreement shall be delivered as follows:

To Plaintiff:

Yvonne Brown
c/o Ehrlich & Schapiro, LLC
1123 Zonolite Road, N.E. Suite 8-B
Atlanta, Georgia 30306
Fax: (855) 415-2480
notice@ehrlichlawoffice.com

To Defendants:

N.N.U., Inc. and
A & Y Family Group, Inc
c/o Elkhalil Law, P.C.
Hassan Elkhalil
1950 North Park Place, Suite 550
Atlanta, Georgia 30339
Fax: (404) 537-1710
Hassan@elkhalillaw.com

6.2   Any Party may change such address for the purpose of this paragraph by giving timely written notice of such change to the other Parties to this Agreement in the manner provided in this paragraph.

**7.    Free Will**

The Parties acknowledge that each has had an opportunity to consult with counsel of their own choosing concerning the meaning, import, and legal

significance of this Agreement, and that each has done so to the extent desired. In addition, the Parties acknowledge that they each have read this Agreement, as signified by their signatures hereto, and are voluntarily executing the same after having had the opportunity to seek the advice of counsel for the purposes and consideration herein expressed.

## 8.    **Miscellaneous Terms and Conditions**

8.1    This Agreement contains the complete settlement agreement between the Parties. Any and all prior agreements, representations, negotiations, and understandings between the Parties, oral or written, express or implied, with respect to the subject matter hereof are hereby superseded and merged herein

8.2    This Agreement may be executed in counterparts or by copies transmitted by facsimile or email, all of which shall be given the same force and effect as the original.

8.3    This Agreement may be modified only by a written document signed by all of the Parties. No waiver of this Agreement or of any of the promises, obligations, terms, or conditions hereof shall be valid unless it is written and signed by the Party against whom the waiver is to be enforced.

8.4    This Agreement shall be binding upon the Parties hereto, their predecessors, successors, parents, subsidiaries, affiliates, assigns, agents, directors,

10

attorneys, officers, families, heirs, spouses, and employees.

8.5    If any provision of this Agreement shall be finally determined to be invalid or unenforceable under applicable law by a court of competent jurisdiction, that part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of said provision or the remaining provisions of this Agreement.

8.6    The Parties acknowledge that they have reviewed this Agreement in its entirety and have had a full opportunity to negotiate its terms, and therefore waive all applicable rules of construction that any provision of this Agreement should be construed against its drafter and agree that all provisions of the Agreement shall be construed as a whole, according to the fair meaning of the language used.

8.7    Plaintiff represents that, other than the Action, she has not filed or authorized the filing of any complaints, charges, or lawsuits against Defendants with any federal, state, or local court, governmental agency, or administrative agency relating to the subject Facilities, and that if, unbeknownst to Plaintiff, such a complaint, charge, or lawsuit has been filed on her behalf, she or it will use her or its best efforts to cause it immediately to be withdrawn and dismissed with prejudice.

11

8.8     The parties and their Counsel agree to execute any and all further documents and perform any and all further acts reasonably necessary or useful in carrying out the provisions and purposes of this Agreement.

8.9     In any action or other proceeding to enforce rights under this Agreement, the prevailing Party shall recover from the losing party all attorneys' fees, litigation expenses, and costs.

8.10    The Parties acknowledge that all Recitals and/or "WHEREAS" clauses preceding Paragraph 1 are incorporated as a material part of this Agreement.

8.11    This Agreement is entered into in, and shall be governed, construed and interpreted in accordance with the substantive laws of, the State of Georgia.

[signatures appear on the following page]

12

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

"PLAINTIFF"

Yvonne Brown

Date 11/4/2017

"NNU"

_____

N.N.U., Inc.

By: _____

As its: _____

Date _____

"A&Y"

_____

A &Y Family Group, Inc.

By: _____

As its: _____

Date _____

13

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

**"PLAINTIFF"**

_____

Yvonne Brown

Date _____

**"NNU"**

_J-Kahla_____

N.N.U., Inc.

By: _Jad Kahla_____

As its: _Manager_____

Date _11/6/17_____

**"A&Y"**

_____

A &Y Family Group, Inc.

By: _Canfecck ABuFarha_____

As its: _President_____

Date _11-06-17_____

13

## EXHIBIT 1

1.    Where applicable, accessible parking spaces on the Property and their associated adjacent access aisles shall be modified so that they have a slope equal to, or less than, 1:48 (one to forty-eight), in compliance with section 502.4 of the 2010 ADAAG standards.

2.    All access aisles adjacent to accessible parking spaces on the Property will be either (a) relocated so that there is no accessible ramp present in the access aisle, or (b) accessible ramps will be removed from the access aisles and replaced with a curb cut ramp, in compliance with section 502.4 of the 2010 ADAAG standards.

3.    All accessible parking spaces on the Property will have proper identification signs installed and/or modified so that they comply with the provisions of section 502.6 of the 2010 ADAAG standards.

4.    Additional accessible parking spaces will be created on the Property so that the total number and distribution of accessible parking spaces complies with sections 208.3 and 502 of the 2010 ADAAG standards to the maximum readily achievable extent.

5.    The credit card slot and/or actuators on the gas pumps servicing the Property will be reduced to a height not exceeding 54 (fifty-four) inches from the finished

1

floor (or ground), in compliance with section 308.3.1 of the 2010 ADAAG standards.

6.      Shopping carts and other items in close proximity to the restroom doors of the Facility will be removed to provide for sufficient minimum maneuvering clearance for the restroom entrance, in compliance with section 404.2.4 of the 2010 ADAAG standards.

7.      Restrooms signage that complies with sections 216.8 and 703 of the 2010 ADAAG standards will be installed at the Facility.

8.      The door leading to the restrooms of the Facility will have its operable hardware replaced with door hardware that complies with section 404.2.7 of the 2010 ADAAG standards installed.

9.      Where applicable, the sinks and vanities in the restrooms of the Facility will be modified and/or replaced with sinks and vanities that provide for adequate knee and toe clearance, in compliance with section 306 of the 2010 ADAAG standards.

10.     The lavatories and/or sinks in the restrooms of the Facility will be insulated or reconfigured to cover any exposed pipes and surfaces, to protect against contact, in compliance with of section 606.5 of the 2010 ADAAG standards.

11.     The commodes in the accessible stalls in the restrooms of the Facility will be modified so that the flush control is located on the open side of the accessible stall,

2

in compliance with section 604.6 of the 2010 ADAAG standards.

12.   The grab bars/handrails adjacent to the commodes in the accessible toilet stalls in the restrooms of the Facility will be reinstalled, modified and/or replaced so that they comply with the provisions of section 604.5 of the 2010 ADAAG standards.

13.   The mirrors in the restrooms of the Facility will be lowered so that the bottom edge of the reflective surface of such mirrors is no more than forty (40) inches from the finished floor, in compliance with section 603.3 of the 2010 ADAAG standards.

3