IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BHUPENDRA GHANDI and A&Y FAMILYGROUP INC., <br><br> Plaintiffs, <br><br> v. <br><br> CRAIG J. EHRLICH, et al., <br><br> Defendants. | CIVIL ACTION FILE <br><br> NO. 1:19-cv-03511-SDG |

## DEFENDANTS' REPLY IN SUPPORT
## OF MOTION FOR RULE 11 SANCTIONS

Plaintiffs' Response (Doc. 22) to Defendants' Motion for Sanction (Doc. 18-1) does not address or refute the multiple reasons for imposing Rule 11 sanctions in this case. In this Reply, Defendants will return to the major reasons for granting sanctions as explained in Defendants' opening brief and show how, with respect to each, Plaintiffs offer no meaningful response or, more frequently, no response at all:

### 1. *Former Co-Plaintiff Agrees that Complaint Contains False Allegations*

It is highly unusual that a Motion for Rule 11 Sanctions will feature sworn testimony *by a former plaintiff* that the complaint contains false allegations, but

1

that is exactly what is found here.  Tommy Vuong, principal of former Plaintiff PQV, LLC, has sworn that the Complaint "contained many allegations in PQV's name that I know to be false." (Doc. 18-3 at 59). In an August 20, 2019 email to Plaintiffs' counsel, the attorney for PQV, Richard Jaffe, states: "PQV, LLC is appalled that such claims are being made in PQV's name." (Doc. 18-3 at 43). Both Mr. Vuong and Mr. Jaffe swear that they were never shown a copy of the complaint before Plaintiffs' counsel filed the complaint in PQV's name. (Doc 18-3 at 52, 57).

In their Response, Plaintiffs refute none of this.  Instead, Plaintiffs claim that PQV, prior to the drafting and filing of the complaint, agreed to be a plaintiff. (Doc. 22 at 22).  But PQV's early agreement to become a plaintiff did not give Plaintiffs license to file, on PQV's behalf, a complaint that Plaintiffs did not share with PQV that "contained many allegations in PQV's name" that PQV knows to be false. (Doc. 18-3 at 43).

The facts, therefore, are now undisputed.  Plaintiffs filed a complaint which one of the original plaintiffs swears contains allegations that are false.  Defendants submit that this alone requires the granting of the Motion.

## 2. *Plaintiffs' Counsel Fails to Dismiss PQV After PQV Demands that they Do So*

As Defendants explained in the Motion for Rule 11 Sanctions, after PQV learned that false allegations had been made in its name in the Complaint, PQV on August 20, 2019, demanded that Plaintiffs' counsel – PQV's lawyer at the time – "withdraw PQV, LLC as a plaintiff in this suit immediately." (Doc. 18-3 at 43). Plaintiffs' counsel *never* followed these unequivocal directions from their then-client, a clear breach of its obligations to their client and to this Court. In their Response to the Motion for Rule 11 Sanctions, Plaintiffs do not address this breach in any way whatsoever or offer any excuse for this sanctionable conduct.

### 3. *Plaintiffs' Counsel Does it Again*

If there were any doubt that sanctions are necessary to deter Plaintiffs from continuing to violate the Rules of Professional Conduct and Rule 11, Plaintiffs on October 31, 2019 filed a "Motion for Leave to Amend the Complaint to Add Plaintiffs" and identified "Moreland, Inc." as another potential plaintiff. (Doc. 23 at 3). That Motion was hopelessly defective, as Defendants' explained in their Response to Motion to Amend (Doc. 28), because, *inter alia,* it did not append the proposed amended pleading and did not even attempt to state a claim for relief for the proposed new plaintiffs. Crucially, however, it has become clear that, again, Plaintiffs' counsel did not have any authority to file any claims against on behalf of a party that counsel purported to represent - Moreland, Inc. On November 4, 2019,

the lawyer who represented Moreland, Inc. in the underlying ADA litigation directed Plaintiffs' counsel to drop Moreland, Inc. from this lawsuit. (Doc. 31 at 2). This time, at least, Plaintiffs' counsel complied with these explicit directions and, on November 11, 2019, filed a "Notice of Voluntary Dismissal with Prejudice" for Moreland, Inc. (*id.*), but not before alleging, purportedly on behalf of Moreland, Inc., without any factual basis and without any prior investigation, that Defendants - lawyers and disabled citizens – had engaged in a criminal conspiracy. Plaintiffs' lawyers are out of control, unconstrained by any sense of decency or professional responsibility.

### 4. *Plaintiffs Falsely Alleged that Defendants Exaggerated their Disabilities*

As Defendants explained in their Motion (Doc. 18-1 at 4), the most personally offensive allegations in the Complaint are that Defendants filed ADA complaints that "included false claims about the extent of disabilities." (Doc. 1 ¶ 53).

In Defendants' Motion for Sanctions, Defendants' provided declarations from each of the ADA Defendants detailing the nature of their disability, the history of their disability, and the impact their disability has had upon their lives. (Doc. 18-3 at 2 *et seq.*) In their Response, Defendants try to disavow these allegations with the following incomplete sentence:

> Defendants' Rule 11 Motion for Sanctions including Defendants'
> declarations and previous Motion to Dismiss (Doc. 10) and Motion to
> Disqualify Counsel (Doc.11) continually and incorrectly state
> Plaintiffs' believe Defendants to be faking or exaggerating their
> disabilities when in fact nowhere in any of Plaintiffs' pleadings.

(Doc 22 at 23) (sic).  The thought is not finished.  It is as if the writer was about to finish this sentence by saying "nowhere in any of Plaintiffs' pleadings . . . is such an allegation made" but then writer read the Complaint and realized that the Complaint repeatedly alleges that Defendants filed complaints that "included false claims about the extent of disabilities." (Doc. 1 ¶ 53).  For the allegation is made repeatedly: in Paragraph 57 (referring to "mass filing ADA complaints which included false claims about the extent of Defendant Holt's disability");  Paragraph 61 (referring to complaints filed by Defendant Brown "which included false claims about the extent of Defendant Brown's disability"); Paragraph 65 (same regarding Defendant Futch); Paragraph 69 (same regarding Defendant Blinkhorn); Paragraph 73 (same regarding Defendant Britton); Paragraph 77 (same regarding Defendant Drake); Paragraph 81 (same regarding Defendant Swafford); and Paragraph 85 (same regarding former Defendant Waters, who passed away in October).

Plaintiffs' Response is reprehensible.  Plaintiffs' gibberish[1] leaves

---

[1] Plaintiffs conclude this paragraph with another incomprehensible statement: "Defendants have repeatedly made this assumption as they are quick to exists [sic], but are far from the truth of Plaintiffs' allegations." (*Id.*)

Defendants' original charge completely unrebutted. In their Response, Plaintiffs make no effort to provide any factual substantiation for their repeated allegation and instead pretend that the allegations were never made. They allegations were made, however, and remain profoundly offensive and false. They warrant the imposition of sanctions.

### 5. *Plaintiffs Falsely Claim that Defendants have made "false claims of visiting public accommodations*

Similarly, Plaintiffs make no attempt to substantiate their false allegations that Defendants made false claims about visiting public accommodations. (Doc. 1, ¶¶53, 57, 61, 65, 69, 73, 77, 81 and 85). These, as is the case with all of Plaintiffs' scurrilous claims, were made upon "information and belief." Plaintiffs have not pleaded a single instance where any Defendant was not present at a public accommodation as they alleged in a Complaint. What's more, at a minimum, Plaintiffs are aware that Defendant Futch did make purchases twice at former Plaintiff PQV, LLC's public accommodation,[2] and are aware that Defendant Holt

---

[2] Defendant Futch provided receipts and bank statements evidencing two visits to the PQV public accommodation. (Doc. 18-3 at 39 to 41). Plaintiffs' counsel were informed that such a proffer had been made along with a demand to withdraw PQV from this lawsuit. Defendants ignored both that demand and the factual basis for the demand. (Doc. 18-3 at 43). What's more, Thomas Vuong, the manager of PQV has stated that "[a]ll evidence in our possession suggests that Mr. Futch was a customer at CD Package on January 26, 2019 and August 13, 2019. Mr. Ehrlich has provided copies of Mr. Futch's receipts for those visits to CD package to Mr. Jaffe and his bank statements which show his transactions at CD Package." (Doc. 18-3 at 58, ¶ 12).

made purchases twice at Plaintiff Ghandi's public accommodation.[3] Plaintiffs offer no explanation for the disparity between their allegations and the evidence in their possession. There is none.

### 6. *Plaintiffs Frivolously Claim that Defendants Made "False" Claims of Encountering Barriers to Access and Legal Injury and Provide No Factual Support*

Plaintiffs' Complaint repeatedly asserts Defendants have made false statements regarding encountered barriers, again "upon information and belief." (Doc. 1 at ¶53, 57, 61, 65, 69, 73, 77, 81, 85). Again, Plaintiffs have not made a single factual allegation demonstrating a single instance that any Defendant did not encounter a barrier to access as alleged in any lawsuit. In their Motion for Sanctions, Defendants referenced the affidavit filed by Defendant Holt in the underlying Ghandi matter, which describes his encounter with such barriers. (Doc. 18-1 at 8). Plaintiffs did not dispute a single element of that affidavit in their Complaint, and similarly did not address Defendant Holt's affidavit in their Response. They have no response because they have no basis whatsoever to dispute a single assertion in it.

Importantly, Plaintiffs' Complaint does not challenge the accuracy of any of

---

[3] *See Plaintiff's Rule 26(a)(1) Disclosures* (Doc. 18-3 at APX-095 to APX-098).

the barriers to access identified in the underlying ADA litigation. In fact, Plaintiffs' Complaint notes the "precise violations" present in those complaints. (Doc. 1 at ¶49 and 50). The Complaint itself admits that the Disabled Defendants did encounter the barriers to access as alleged, since they "were sent to find violations at the business establishments sued." (Doc. 1 at ¶ 49).

A plaintiff in a Title III ADA action has standing to correct barriers to access that experienced, observed or "had actual notice" throughout the subject property at the time the Complaint was filed. *Access Now, Inc. v. S. Fla. Stadium Corp.*, 161 F. Supp. 2d 1357, 1365 (S.D. Fla. 2001). *See also Gaylor v. DDR Se. Abernathy, Ltd. Liab. Co.*, No. 1:12-CV-4343-TWT, 2013 U.S. Dist. LEXIS 162746, at 9-10 (N.D. Ga. 2013) ("The barriers that he had no knowledge of when he filed the complaint will affect him just as much as those he did know about").

Thus, the statements concerning the barriers to access observed by the Disabled Defendants in the underlying ADA Complaints in *Holt v. Ghandi* (1:19-cv-00692-MLB) and *Brown v. A & Y Family Investments, Inc. et al.* (1:17-cv-03560-AT), cannot be, as a matter of law, "fraudulent." More importantly, Plaintiffs did not allege a single instance where the Disabled Defendants "fraudulently" alleged legal injury resulting from encountering barriers to access. Plaintiffs' Complaint specifically states that the Disabled Defendants "were sent to

find violations at the business establishments to be sued." (Doc. 1 at ¶ 49). Again, Plaintiffs disprove their own baseless allegations.

7. ***Plaintiffs Frivolously and Falsely Claim that the Disabled Defendants "Falsely" Plead Intent to Return to Public Accommodations***

In the same vein, Plaintiffs deem themselves the objective arbiter of the Disabled Defendants' subjective intent. The Complaint repeatedly asserts Defendants have made false statements in pleadings regarding the ADA Defendants' intent to return. (Doc. 1, ¶53, 57, 61, 65, 69, 73, 77, 81 and 85). Once more, Plaintiffs offer no facts in their Complaint that supports this claim.

This frivolous allegation is also another example of Plaintiffs making claims that conflict with the evidence in their possession. As discussed, *supra,* Plaintiffs are well aware that the Disabled Defendants have indeed made return visits to the public accommodations at issue in the underlying litigation.

Defendant Ehrlich was the attorney that filed both the in *Holt v. Ghandi* (19-00692) and *Brown v. NNU, Inc.* (17-3560). In his declaration, he states that "[e]ach of the named Defendants in this [RICO] case have pledged to return to any public accommodation as necessary to secure their standing to ensure those public accommodations are in compliance with the ADAAG to the maximum readily achievable extent." (Doc. 18-3 at 139, ¶11).

When coupled with the fact that Plaintiffs are well aware of such return

find violations at the business establishments to be sued." (Doc. 1 at ¶ 49). Again, Plaintiffs disprove their own baseless allegations.

7. ***Plaintiffs Frivolously and Falsely Claim that the Disabled Defendants "Falsely" Plead Intent to Return to Public Accommodations***

In the same vein, Plaintiffs deem themselves the objective arbiter of the Disabled Defendants' subjective intent. The Complaint repeatedly asserts Defendants have made false statements in pleadings regarding the ADA Defendants' intent to return. (Doc. 1, ¶53, 57, 61, 65, 69, 73, 77, 81 and 85). Once more, Plaintiffs offer no facts in their Complaint that supports this claim.

This frivolous allegation is also another example of Plaintiffs making claims that conflict with the evidence in their possession. As discussed, *supra,* Plaintiffs are well aware that the Disabled Defendants have indeed made return visits to the public accommodations at issue in the underlying litigation.

Defendant Ehrlich was the attorney that filed both the in *Holt v. Ghandi* (19-00692) and *Brown v. NNU, Inc.* (17-3560). In his declaration, he states that "[e]ach of the named Defendants in this [RICO] case have pledged to return to any public accommodation as necessary to secure their standing to ensure those public accommodations are in compliance with the ADAAG to the maximum readily achievable extent." (Doc. 18-3 at 139, ¶11).

When coupled with the fact that Plaintiffs are well aware of such return

visits to the PQV and Ghandi properties, it becomes clear Plaintiffs are maintaining this action despite evidence to the contrary. This demonstrates bad faith and improper purpose, and Plaintiffs need to be sanctioned.

### 8. *Plaintiffs Made Frivolous Allegations about the underlying Futch v. PQV underlying case*

As Defendants explained on page 5 of their Motion for Rule 11 Sanctions, Plaintiffs use the *PQV* case as an example of a fraudulent lawsuit filed by Defendants, but do not identify or substantiate anything that was false or fraudulent about the case. In their Response, Plaintiffs make no attempt to substantiate these allegations, conceding, as they must, that PQV directed Plaintiffs' counsel to dismiss PQV from the case because the allegations relating to the suit were false. (Doc. 18-3 at 59). Claiming that the *PQV* case was fraudulent was sanctionable.

### 9. *Plaintiffs Make False Allegations about the Ghandi case.*

As Defendants explained on page 7 of their Motion for Rule 11 Sanctions, Plaintiffs use the *Ghandi* case as an example of a fraudulent lawsuit filed by Defendants, but do not identify or substantiate anything that was false or fraudulent about the allegations. Defendants in their motion showed, with evidence, that Plaintiffs' counsel were well aware that Holt is an amputee, that he made two visits to Mr. Ghandi's property, and that Mr. Ghandi was prompted to make repairs to his property to address the ADA violations alleged in that case. (Doc. 18-1 at 8). In

their Response, Plaintiffs do not discuss the case at all, thereby conceding the legitimacy of the underlying lawsuit and the illegitimacy of their own Complaint against these Defendant based on that lawsuit.

What's more, Plaintiffs have repeatedly and grossly mischaracterized the circumstances surrounding the dismissal of the *Holt v. Ghandi* matter. In their "RICO Case Statement," Plaintiffs state that "[a]fter Plaintiff Ghandi refused settlement and planned to proceed, Defendants issued a voluntary dismissal." (Doc. 25 at 16). The dismissal was by joint stipulation, as evidenced by Plaintiffs' own exhibits. (Doc. 1-1 at 185). This renders their claim that Ghandi "planned to proceed" patently false. The communications between Plaintiffs' counsel and Defendant Ehrlich make it abundantly clear that the joint dismissal was entered as direct result of Ghandi's remedial efforts in furtherance of wheelchair accessibility. (Doc. 1-1 at Exhibit N). These deliberate and continuing misrepresentations warrant sanctions.

### 10. *Plaintiffs Make Frivolous Allegations about the A&Y Case*

As Defendants explained on page 9 of their Motion for Rule 11 Sanctions, Plaintiffs allege that the *A&Y* case is evidence of a criminal conspiracy because, notwithstanding A&Y's noncompliance with Judge Story's Consent Order, Defendants have not initated any enforcement actions. As Defendants explain, the

contention is completely frivolous: even if indulging a violation of the Consent Order were criminal (a preposterous suggestion) A&Y had until November 8, 2019 to comply with the Consent Order. (*See generally* Doc. 18-1 at 10). In their Response, Plaintiffs do not address this argument at all, conceding, again, that the absurd allegations in the Complaint are sanctionable.

### 11. *Plaintiffs Have No Claim against ADA Consultants of America, LLC*

As Defendants explained on page 10 of their Motion for Rule 11 Sanctions, there are no facts[4] that would warrant including ADA Consultants of America LLC as a defendant in this case and doing so was sanctionable for any number of reasons, concluding: "Plaintiffs took a blind swing against ADA Consultants, and they should be sanctions for such wanton and reckless conduct." (Doc. 18-1 at 12). In Response to this direct charge, Plaintiffs say nothing: Plaintiffs, again, do not respond to this argument, conceding that sanctions are appropriate.

### 12. *Plaintiffs Case is Contrary to Binding Eleventh Circuit Precedent*

As exhaustively addressed in briefing filed in support of Defendants' Motion

---

[4] Plaintiffs have alleged that Defendant Schapiro "filed on behalf of Defendants Futch, Brown, Blinkhorn, Britton, Drake, Swafford, Waters and Holt false pleadings, declarations and correspondence with the Court and false discovery responses." Douglas Schapiro is not admitted to practice law in Georgia or Colorado federal courts. *See* Declaration of Douglas Schapiro (Doc. 18-3 at 133). Douglas Schapiro has not filed a single pleading, declaration, or other court document in any of the underlying ADA litigation.

to Dismiss, Plaintiffs' entire case is without substantial merit because of binding Eleventh Circuit precedent, including *United States v. Pendergraft,* 297 F.3d 1198 (11th Cir. 2002) and *Ramey v. Allstate Ins. Co.,* 370 F.3d 1086 (11th Cir. 2004). Defendants incorporate that discussion by reference.

### *13.    Plaintiffs Still Cannot Identify Any False Statement*

As Defendants explain on page 17 of their Motion for Rule 11 Sanctions, "Plaintiffs' Complaint failed to reference any precise statements, documents or misrepresentations made" or the "time, place and person responsible for a specific statement." (Doc. 18 at 17). They did not identify a single instance where a Defendant made false claims about the extent of their disability. They did not identify a single instance where a false claim was made that a public accommodation was visited. They have not identified a single instance where any false claim was made regarding encountering a barrier to access. Nor have they identified a single false claim regarding legal harm, or a false claim regarding any Defendant's intent to return to a public accommodation. (Doc. 1 ¶¶ 53, 57, 61, 65, 69, 73, 77, 81, 85, 103 and 111).

Plaintiffs at least respond on this point, arguing, in effect, that there is a "mass fraud" exception to Rule 9(b) and Rule 11: "However, this is not a simple case of fraud involving a single transaction. Defendants' multifaceted scheme to

defraud money from small businesses spans years and State through mass filings." (Doc. 22 at 19). Plaintiffs' argument is this: although a simple fraud involving a single transaction requires that the fraud be identified specifically, if many frauds are alleged, not a single one of them needs to be described or specifically alleged.

There is absolutely no authority for such an outrageous position. Plaintiffs obviously have no facts to support even the allegation of a single misrepresentation or a single fraud claim against any one of the Defendants. Plaintiffs cannot escape sanctions for accusing Defendant Holt of criminal conduct without any evidentiary support, for example, simply by adding similarly unfounded allegations against Defendants Ehrlich, Schapiro, Brown, Futch, Blinkhorn, Britton, Drake and Swafford.

### 14. *Failure to Investigate*

As explained on page 18 of Defendants' Motion for Rule 11 Sanctions, Plaintiffs made no effort[5] to investigate the truth or falsity of their claims. (Doc.

---

[5] While the total number of cases filed by Defendants should be of no issue, Plaintiffs' inexactitude in presenting the total number of cases bears mention, as it reveals the haphazard and inadequate investigation Plaintiffs engaged in before filing the instant matter. They have repeatedly included nearly one hundred cases filed in the Northern District of Georgia by Defendant Ehrlich that were not filed under the ADA by any of the Disabled Defendants. (Doc. 1 at ¶ 8; Doc. 13 at 5; Doc. 15 at 4; Doc. 25 at 3). Plaintiffs further alleged in their Complaint that the Defendant attorneys have filed "fifteen (15) in the Middle District of Georgia, twelve in the Southern District of Georgia, and one hundred and twenty-two (122) in the District of Colorado." (Doc. 1 at ¶ 42). In fact, Defendants have filed zero (0) ADA cases in the Middle District of Georgia. Defendants have filed zero (0) ADA cases in the Southern District of Georgia. And far

18 at 25-26). In Response, although Plaintiffs recognize the duty to investigate (Doc. 22 at 8), Plaintiffs do not respond to Defendants' failure to investigate claim and do not describe any pre-filing investigation. This too warrants sanctions.

Each of these fourteen instances independently warrant the imposition of sanctions under Rule 11. Together, they warrant sanctions and any additional relief that the Court, in its discretion, may deem appropriate. *See* Rule 11(c)(4).

Respectfully submitted, this 14th day of November, 2019.

/s/Bruce P. Brown
Bruce P. Brown
*Counsel for Defendants*
Georgia Bar No. 064460
BRUCE P. BROWN LAW LLC
1123 Zonolite Road NE, Suite 6
Atlanta, GA 30306
Phone: (404) 881-0700
bbrown@brucepbrownlaw.com

---

from one hundred and twenty-two (122) cases in the District of Colorado, Defendant Ehrlich has filed a total four (4) ADA cases in the District of Colorado.

## **CERTIFICATE OF COMPLIANCE**

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ Bruce P. Brown*
Bruce P. Brown

**CERTIFICATE OF SERVICE**

I have this day served counsel of record with a copy of the foregoing via the Court's electronic filing system.

This 14th day of November, 2019.

/s/Bruce P. Brown
Bruce P. Brown