## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

BHUPENDRA GHANDI and A&Y FAMILY
GROUP INC.,

     Plaintiffs,

          v.

CRAIG J. EHRLICH, *et al.*,

     Defendants.

Civil Action No.
1:19-cv-03511-SDG

## ORDER AND OPINION

This matter is before the Court on Defendants' motion to dismiss [ECF 10]; motion to disqualify Plaintiffs' counsel [ECF 11]; motion for sanctions [ECF 18]; and, unopposed motion to strike Plaintiffs' supplemental response [ECF 29]. Also pending are Plaintiffs' motions to amend the Complaint [ECF 23; ECF 33]; and, motion to certify class [ECF 24].

For the reasons discussed below, the Court **GRANTS** Defendants' motion to dismiss, motion for sanctions, and motion to strike, and **DENIES AS MOOT** Defendants' motion to disqualify Plaintiffs' counsel. The Court **DENIES** Plaintiffs' motions to amend the Complaint and **DENIES AS MOOT** Plaintiffs' motion for class certification.

## I.     BACKGROUND

The following facts are accepted as true for purposes of this motion.[1] Plaintiffs seek to represent a proposed class of all past and current business and property owners who have been accused of violations of the Americans with Disabilities Act (ADA) by Defendants.[2] Defendant Craig Ehrlich is a Georgia attorney who owns and operates Defendant The Law Office of Craig J. Ehrlich, LLC (The Law Office).[3] Defendant Douglas Schapiro is a Florida attorney who practices with Ehrlich at Defendant Ehrlich & Schapiro, LLC (E&S).[4] Schapiro also owns and operates Defendant ADA Consultants of America, LLC (ADACOA), a Florida limited liability company that consults on ADA issues around the country.[5] The other named Defendants include certain of Ehrlich's and Schapiro's disabled clients in previous or current ADA litigation.[6] Plaintiffs also named as

---

[1]   *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[2]   ECF 1, ¶ 6.

[3]   *Id.* ¶ 8.

[4]   *Id.* ¶ 9.

[5]   *Id.*

[6]   *Id.* ¶¶ 10–17.

Defendants Does 1 through 100, whom they describe as actively conspiring with Defendants but whose identity is as yet unknown.[7]

The Law Office and E&S are Georgia law firms that specialize in ADA litigation in this judicial district.[8] Plaintiffs believe E&S transitioned into The Law Office in 2018.[9] They also believe the primary function of ADACOA is to bolster, assist, and facilitate the work handled by the two law firms.[10]

Plaintiffs contend that Defendants formed a criminal enterprise by using the ADA to initiate numerous federal cases based on false allegations of disability, injury, and standing to collect quick settlements from Georgia property owners.[11] Plaintiffs allege that, as of the filing of this action, Ehrlich and E&S had filed 558 cases in this district, plus additional cases in other districts.[12] Plaintiffs assert that the majority of the property owners in Defendants' underlying ADA litigations are small business owners who are immigrants and cannot afford legal

---

[7]   *Id.* ¶ 21.

[8]   *Id.* ¶¶ 18–19.

[9]   *Id.* ¶ 19.

[10]   *Id.* ¶ 20.

[11]   *Id.* ¶ 22.

[12]   *Id.* ¶ 42.

representation.[13] Plaintiffs allege that these business owners were pressured by Ehrlich and Schapiro to settle the cases.[14]

Plaintiffs allege that Ehrlich represented Brown in a lawsuit against Plaintiff A&Y Family Group, Inc. (A&Y) filed on September 14, 2017, *Brown v. N.N.U., Inc. and A&Y Family Group, Inc.*, 1:17-cv-03560-RWS (N.D. Ga.) (hereinafter *Brown v. A&Y*).[15] The lawsuit was based on Brown's alleged suffering and harm because of A&Y's ADA violations.[16] Prior to the time A&Y was required to file an answer in that suit, Ehrlich sent A&Y a settlement demand.[17] A Joint Stipulation to Approve Consent Decree and to Dismiss with Prejudice was entered into by the parties on November 9, 2017. *Brown v. A&Y*, ECF 11.[18] The consent decree gave A&Y 24 months to make repairs and modifications to become ADA compliant and awarded Brown $4,250.00 in attorneys' fees and costs.[19] As of the date of filing the

---

[13] *Id.* ¶ 23.

[14] *Id.* ¶ 24.

[15] *Id.* ¶ 33.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

Complaint in this action, there had been no investigation as to A&Y's compliance with the settlement nor had the 24 months elapsed.[20]

Plaintiffs assert that Ehrlich represented Holt in a lawsuit against Plaintiff Bhupendra Ghandi's convenience store, Kwik E Mart, filed on February 8, 2018, *Holt v. Ghandi*, 1:19-cv-00692-MLB (N.D. Ga.) (hereinafter *Holt v. Ghandi*).[21] In response, Ghandi filed a motion to dismiss, as well as a motion (1) to deem Holt a vexatious litigant, (2) for a prefiling order prohibiting Holt from initiating new litigation without leave of court, and (3) for monetary sanctions. *Holt v. Ghandi*, ECF 7 & 8.[22] After an exchange of emails between Ghandi's counsel (the same counsel who represents Ghandi in this matter) and Ehrlich, the parties agreed to dismiss the case with prejudice and entered a stipulation to that effect. *Id.* at

---

[20]   *Id.*

[21]   *Id.* ¶ 34.

[22]   *Id.*

ECF 12.[23] Plaintiffs assert that Defendants' allegations against A&Y and Ghandi were false.[24]

## II.   PROCEDURAL HISTORY

Plaintiffs filed their Complaint on August 2, 2019.[25] It asserts three claims for relief under the Racketeer Influenced and Corrupt Practices Act (RICO), 18 U.S.C. § 1962(b), (c), and (d).[26] Specifically, Plaintiffs allege that "Defendants have engaged in a pattern of fraud and deception by participating in the preparation, drafting, filing, and prosecution of fraudulent ADA lawsuits in violation of

---

[23]   Plaintiffs allege that, after Ghandi filed those motions, Ehrlich aggressively demanded settlement via harassing emails before dismissing the case with prejudice. *Id.* ¶ 34 (citing ECF 1-1, at 165–87). However, the emails show that Ehrlich repeatedly attempted to reach Ghandi's counsel to discuss the case and the accusations made in Ghandi's motions—to no avail. Further, the emails show that Ehrlich agreed to dismiss *Holt v. Ghandi* only after Ghandi addressed the ADA violations at the property. ECF 1-1, at 183.

[24]   ECF 1, ¶¶ 36–37. The Complaint also includes allegations regarding an ADA lawsuit filed against PQV, LLC (PQV). *Id.* ¶ 35. However, PQV withdrew from this action shortly after it was filed. ECF 9; *see also* Section IV.b. *infra*.

[25]   ECF 1.

[26]   *Id.* ¶¶ 90, 125, 132.

[RICO]."[27] This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331.[28]

On September 18, 2019, Defendants filed their Motion to Dismiss.[29] Plaintiffs responded on October 2.[30] Defendants filed their reply brief on October 24.[31] On October 29, Plaintiffs filed a Response In Opposition to Defendants' Reply Brief In Support of Motion to Dismiss.[32] On November 10, Defendants moved to strike Plaintiffs' second response, to which Plaintiffs did not respond.[33]

---

[27] *Id.* ¶ 91.

[28] Plaintiffs also assert that the Court has subject matter jurisdiction over its claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338. *Id.* ¶ 1. As those statutes relate to trademark and copyright suits, it is unclear how they are relevant to this matter.

[29] ECF 10.

[30] ECF 13.

[31] ECF 19.

[32] ECF 21. Plaintiffs filed this surreply without leave of court. Accordingly, the Court does not consider it. LR 7.1, NDGa (permitting the filing of motions, responses, and replies; making no provision for surreplies); *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005) ("Neither the Federal Rules of Civil Procedure nor this Court's Local Rules authorize the filing of surreplies.") (citing *Byrom v. Delta Family Care – Disability & Survivorship Plan*, 343 F. Supp. 2d 1163, 1188 (N.D. Ga. 2004)).

[33] ECF 29. Since Plaintiffs failed to respond to Defendants' motion to strike, the Court treats it as unopposed and grants the motion. LR 7.1(B), NDGa ("Failure to file a response shall indicate that there is no opposition to the motion.").

On September 27, 2019, Defendants filed a Motion to Disqualify Plaintiffs' Counsel, Charlotte Carter and Hassan Elkhalil of Elkhalil Law, P.C.[34] On October 10, Plaintiffs filed their response in opposition to Defendants' disqualification motion.[35] On October 24, Defendants filed their reply brief.[36]

On October 17, 2019, Defendants moved for Fed. R. Civ. P. 11 sanctions.[37] Plaintiffs filed their response in opposition on October 31.[38] Defendants filed their reply on November 14.[39]

On October 31, 2019, Plaintiffs moved for leave to amend the Complaint to add Moreland, Inc. and Atlanta Bay Breeze, Inc. as plaintiffs.[40] On November 10, Defendants filed their response in opposition.[41] On November 12, Proposed Plaintiff Moreland Inc. filed a Notice of Voluntary Dismissal With Prejudice asking to be removed from the lawsuit.[42]

---

[34] ECF 11.

[35] ECF 15.

[36] ECF 19.

[37] ECF 18.

[38] ECF 22.

[39] ECF 35.

[40] ECF 23.

[41] ECF 28.

[42] ECF 31.

On November 12, 2019, Plaintiffs moved to amend their proposed amended Complaint to remove Moreland, Inc. and add additional state law claims against Ehrlich and The Law Office.[43] On November 22, Defendants filed their response in opposition to this second motion to amend.[44] Plaintiffs did not file a reply brief in support of either of their motions to amend.

On October 31, 2019, Plaintiffs moved for class certification and filed a RICO Case Statement.[45] On December 11, Plaintiffs filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction.[46] The Court held a hearing to address the emergency motion on December 18 (the Hearing).[47] The Court denied the motion during the Hearing orally and later by written Order.[48]

## III.   MOTION TO DISMISS

### a.   Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to

---

[43]   ECF 33.

[44]   ECF 36.

[45]   ECF 24; ECF 25.

[46]   ECF 37.

[47]   ECF 39.

[48]   ECF 40.

relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F. 3d 1283, 1289 (11th 2010) (quoting *Twombly*, 550 U.S. at 570). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint must also present sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296

(11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). This principle does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

### b.   Discussion

Defendants' motion to dismiss argues that the Complaint must be dismissed because (1) RICO claims may not be predicated on the filing of lawsuits; (2) the claims are barred by res judicata as impermissible collateral attacks; and (3) the Complaint does not comply with the federal pleading standards.[49] The Court **GRANTS** Defendants' motion to dismiss.

Under 18 U.S.C. § 1962(c), it is unlawful "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." "The 'pattern of racketeering activity' element requires that a civil RICO plaintiff establish 'at least two acts of racketeering activity.'" *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 948 (11th Cir. 1997) (citing 18 U.S.C. § 1961(5)). "Racketeering activity" includes a violation of any of the criminal statutes listed under § 1961(1). *Id.* A RICO plaintiff must establish that the defendant could be convicted for violating

---

[49]   ECF 10-1, at 4.

any of those predicate statutes. *Id.* Accordingly, the plaintiff must allege facts sufficient to support the statutory elements for at least two of the predicate acts in order to survive a motion to dismiss. *Id.*

Plaintiffs' RICO claims depend on "a pattern of fraud and deception by participating in the preparation, drafting, filing and prosecution of fraudulent ADA lawsuits."[50] Plaintiffs assert that, through this pattern of filing allegedly fraudulent suits, Defendants committed predicate violations of 18 U.S.C. §§ 1341 and 1343, mail and wire fraud, and 18 U.S.C. § 1956(a)(1)(A)(i), money laundering.[51] Plaintiffs' allegations regarding the mail and wire fraud claims center solely on Defendants' allegedly fraudulent litigation activities.[52] Plaintiffs' allegations of money laundering are entirely dependent on the mail and wire fraud claims—with Plaintiffs contending that Defendants engaged in financial transactions with the proceeds from unspecified unlawful activity, to wit, their allegedly fraudulent litigation activities.[53]

---

[50]   ECF 1, ¶ 91.

[51]   *Id.* ¶¶ 100, 116.

[52]   *Id.* ¶¶ 100–15.

[53]   *Id.* ¶¶ 116–17.

Binding Eleventh Circuit precedent holds that the threat of filing or the actual filing of a civil action cannot support a RICO claim when the claim is predicated on extortion under the Hobbs Act, 18 U.S.C. § 1951. *United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086 (11th Cir. 2004); *Town of Gulf Stream v. O'Boyle*, 654 F. App'x 439 (11th Cir. 2016). In so finding, the Eleventh Circuit focused on the detrimental effect the converse holding would have on the judicial system and the public's access to courts. Even though Plaintiffs' claims here are predicated on different criminal statutes, the same concerns and reasoning that guided the Court of Appeals' opinions apply with even more force to this case.

In *Pendergraft*, the Eleventh Circuit addressed a criminal appeal in which the defendants had been charged for threatening to file a lawsuit against a county and to use false evidence, in the form of affidavits, in support of the lawsuit. 297 F.3d at 1200. In the opinion, the court addressed whether the threat to litigate was "wrongful" under the Hobbs Act. *Id.* at 1206–08. In answering no, the court emphasized the other processes through which claims of fraudulent litigation activity can be addressed and the ability of state and federal courts to deal with such claims in the original lawsuit. *Id.* The court explained:

> After all, under our system, parties are encouraged to resort to courts for the redress of wrongs and the enforcement of rights. For this reason, litigants may be sanctioned for only the most frivolous of actions. These sanctions include tort actions for malicious prosecution and abuse of process, and in some cases recovery of attorney's fees, but even these remedies are heavily disfavored because they discourage the resort to courts.

> History has taught us that, if people take the law into their own hands, an endless cycle of violence can erupt, and we therefore encourage people to take their problems to court. We trust the courts, and their time-tested procedures, to produce reliable results, separating validity from invalidity, honesty from dishonesty. While our process is sometimes expensive, and occasionally inaccurate, we have confidence in it.

*Id.* at 1206–07 (internal citations omitted). The court was also troubled by the use of a federal criminal statute to punish civil litigants, allowing for "yet another collateral way for litigants to attack one another." *Id.* "The reality is that litigating parties often accuse each other of bad faith. The prospect of such civil cases ending as criminal prosecutions gives us pause." *Id.*

In *Raney*, the plaintiff, an anti-abortion activist, was sued by three abortion clinics for engaging in certain activities near the entrances to the clinics. *Raney*, 370

F.3d at 1087.[54] After those suits were dismissed without prejudice, the plaintiff filed a RICO action against the clinics for malicious prosecution, extortion, and conspiracy to destroy him and his business. *Id.* The Eleventh Circuit held that the plaintiff's RICO claims failed because they were impermissibly predicated on the actual filing of lawsuits, as opposed to threats. *Id.* at 1088.

The court explained that, even though the plaintiff alleged "various specific complaints including mail fraud, extortion, and malicious prosecution, all of [the claims] relate to the alleged conspiracy to extort money through the filing of malicious lawsuits." *Id.* It found that such an extortion argument was foreclosed by *Pendergraft* and reemphasized some of the primary concerns discussed in that opinion, including transforming "every state-law malicious prosecution action into a federal crime." *Raney*, 370 F.3d at 1088 (citing *Pendergraft*, 297 F.3d at 1206–08).

In 2016, the Eleventh Circuit reinforced *Raney* in a RICO case dealing with a much larger allegedly extortionate scheme. In *Town of Gulf Stream*, the defendants "pummeled the town with nearly 2,000 public records requests, many of them

---

[54]   The plaintiff also sued its homeowner's insurance policy holder, Allstate, because the insurance company had filed a declaratory judgment in the original action seeking to establish that it did not have a duty to defend him. *Raney*, 370 F.3d at 1087.

frivolous, with no intention of actually reviewing the results," in order to induce a violation of Florida's Public Records Act. 654 F. App'x at 441. The defendants would then threaten or actually file a lawsuit which entitled the defendants to prevailing party attorneys' fees under Florida law. *Id.* The plaintiffs alleged that the defendants' scheme centered around the threat of prevailing party attorneys' fees and claimed that the defendants demanded unreasonable settlements and threatened to file more frivolous records requests if the town did not settle. *Id.* The plaintiffs filed a class action suit on behalf of municipalities, municipal agencies, and private contractors who had been inundated with the defendants' requests. *Id.* at 442.

The Eleventh Circuit differentiated the facts there from *Raney* and *Pendergraft* due to the number of times the defendants had allegedly threatened or filed a lawsuit to obtain the attorneys' fees. *Id.* at 444. It found that notwithstanding the "grand scale" of the defendants' actions, the "same concerns" applied. The circuit court explained:

> Our judicial system, and [Florida's Public Records Act] in particular, encourages citizens to use the courts to resolve public records disputes. Moreover, citizens have a constitutional right to petition the government for redress. We believe that regardless of the scope and scale of the litigation, the courts are amply equipped to deal with frivolous litigation. *See, e.g., Florida Bar v. Committe*,

> 916 So. 2d 741, 749 (Fla. 2005) (sanctioning an attorney for, among other things, "repeatedly attempt[ing] to relitigate the same nonmeritorious issue in an attempt to frustrate the legal process and to harass [an] attorney debt-collector"). Thus, *Pendergraft* and *Raney* control, and the alleged misconduct cannot as a matter of law constitute the predicate act of extortion for purposes of the plaintiffs' civil RICO claim.

*Id.*

The holding in *Pendergraft* and its progeny does not necessarily prohibit the use of fraudulent litigation activities to support other predicate violations of criminal statutes in a federal RICO case. However, the Court finds that the reasoning employed by the Eleventh Circuit in these authorities applies even more so in this case, where Plaintiffs' RICO claims are predicated on the novel theory that the frequent filing of ADA litigation is somehow illegal.

Plaintiffs have not, and apparently cannot, identify a single fraudulent statement, filing, or activity by Defendants. During the Hearing, Plaintiffs' counsel, Elkhalil, conceded that Plaintiffs have no knowledge of any defendants in the underlying litigations who were not, in fact, in violation of the ADA as had been alleged:

> THE COURT: Are you alleging that the defendants [in the underlying ADA litigation] are not in violation of the ADA?

> MR. ELKHALIL: They may be. Some of them may be, but
> we don't know. I know our clients, they were, they had
> violations in their facilities and they corrected some of
> those violations.[55]

Additionally, contrary to the Complaint's insinuations, Plaintiffs' counsel also

conceded that they had no basis for claiming that any of the plaintiffs in the

underlying ADA litigation are not actually disabled:

> THE COURT: Let me state for the record that you made
> air quotes when you said this person was disabled. Are
> you alleging the person was not disabled?

> MR. ELKHALIL: We have information from our clients,
> Your Honor, to say that some of the people who visited,
> they don't look like they are disabled. Now, through
> discovery—and, of course, if we find out that they are
> disabled, okay, we're not going to argue the fact that they
> were disabled.[56]

The Court's exchange with Plaintiffs' counsel during the Hearing made plain that

the "main purpose" of Plaintiffs' lawsuit is not to expose any particular fraudulent

activity by Defendants, but rather to complain to the judiciary branch about a

"loophole" in the ADA that allows these lawsuits to be brought in the first place:

> THE COURT: . . . . What is it that you contend was false
> in the underlying lawsuits? Was it the plaintiffs'
> disabilities? Was it that the clients were not really in

---

[55]   ECF 41 (Hr'g Tr.), 14:07–11.

[56]   *Id.* 13:06–13.

> violation of the ADA? What is it exactly that was false in those underlying [cases]?
>
> MR. ELKHALIL: There are many violations, Your Honor. But the main purpose of our lawsuit is the fact that there is a loophole in the law and defendant is using this loophole for his own benefit. It is not for the benefit of the disabled.[57]

Thus, Plaintiffs' claims center not on the filing of false or frivolous ADA lawsuits, but rather on filing so many (presumably) meritorious ones. Plaintiffs appear to take issue with the ADA itself and its process for filing litigation, since they admitted during the Hearing that Defendants' litigation activity is authorized by the statute: "Under the ADA, Your Honor, they're not doing anything that they're not supposed to do."[58] Plaintiffs, it seems, are petitioning the wrong branch of government about their statutory grievance.

The Ninth Circuit cases cited by Plaintiffs, *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353 (9th Cir. 2005) and *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638 (9th Cir. 2009), do not provide support for their claims. Those cases address evidence suppression as opposed to the filing of an allegedly fraudulent lawsuit. In those cases, the defendants allegedly falsified, concealed, and

---

[57] *Id.* 12:16–24; *see also id.* 13:18–14:06; 14:15–23.

[58] *Id.* 15:23–24.

misrepresented critical evidence during the course of the parties' previous litigation. *Living Designs*, 431 F.3d at 365 (the defendant concealed and withheld contamination testing data in a contamination suit); *Kearney*, 590 F.3d at 642 (the defendant concealed and withheld percolation testing data in a property valuation suit). There is no allegation in the instant case that Defendants suppressed evidence in the underlying ADA litigation.

Moreover, other courts have found litigation activities insufficient to support federal RICO claims. *Kim v. Kimm*, 884 F.3d 98, 103–04 (2d Cir. 2018) (addressing RICO claim based on mail and wire fraud and obstruction of justice and holding "allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act"); *see also Langan v. Smith*, 312 F. Supp. 3d 201, 206–07 (D. Mass. 2018) ("As with extortion, courts typically are skeptical of attempts to fashion fraud-based RICO claims out of litigation activities. These cases teach that RICO claims typically do not survive when rooted solely in litigation-related mail or wire fraud predicates.") (collecting cases).

Finally, Plaintiffs assert that the RICO statute must allow for fraudulent litigation activity to support RICO claims because one of the predicate acts listed under § 1961(1) is 18 U.S.C. § 1512, which relates to tampering with a witness, victim, or informant. The Court agrees. However, Plaintiffs make no such

tampering allegations. In fact, Plaintiffs make no allegation of fraudulent activity at all. Rather, Plaintiffs have brought a federal RICO claim predicated solely on the filing of apparently legitimate lawsuits. They have not provided any authority, in this circuit or any other, that allows for such claims.

The Court **GRANTS** Defendants' motion to dismiss the action in its entirety.

## IV.   MOTION FOR SANCTIONS

### a.   Legal Standard

"The purpose of Rule 11 sanctions is to 'reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers.'" *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) (quoting *Massengale v. Ray*, 267 F.3d 1298, 1302–03 (11th Cir. 2001)). Such sanctions are appropriate in the following circumstances:

> (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.

*Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996).

The standard for assessing conduct under Rule 11 is objective and asks "whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified." *Kaplan*, 331 F.3d at 1255 (citing *Riccard v.*

*Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002)). In conducting the inquiry, the court "first determines whether the party's claims are objectively frivolous— in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry." *Worldwide Primates*, 87 F.3d at 1254 (citing *Jones v. Int'l Riding Helmets, Ltd*, 49 F.3d 692, 695 (11th Cir. 1995)). "If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound." *Id.* (citing *Jones*, 49 F.3d at 695).

"The type and amount of sanction imposed calls for the proper exercise of a district court's discretion." *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001) (quoting *Aetna Ins. Co. v. Meeker*, 953 F.2d 1328, 1334 (11th Cir. 1992)). Sanctions may be imposed on an attorney rather than, or in addition to, the client. Fed. R. Civ. P. 11(c)(1); *see also Worldwide Primates*, 87 F.3d at 1254. Sanctions are warranted "when the claimant exhibits a deliberate indifference to obvious facts," and "may be appropriate when the plain language of an applicable statute and the case law preclude relief." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) (citations omitted). "However, the purpose of Rule 11 is to deter frivolous lawsuits and not to deter novel legal arguments or cases of first impression." *Id.* (citing *Laborers Local*

*938 Joint Health & Welfare Tr. Fund v. B.R. Starnes Co. of Fla.*, 827 F.2d 1454, 1458

(11th Cir. 1987)).

###### b.    Analysis

Defendants argue that Plaintiffs and their counsel should be sanctioned

under Rule 11 for filing a baseless action.[59] The Court finds that sanctions against

Plaintiffs' counsel are warranted because Plaintiffs' claims are frivolous. A

reasonable attorney would have known that the claims were frivolous at the time

the action was filed. This action is not one that simply seeks to advance a novel

legal argument or one of first impression. Rather, it is a retaliatory action brought

against disabled plaintiffs and their attorneys who successfully sued Plaintiffs for

admittedly meritorious ADA violations. Plaintiffs had no good faith, viable legal

theory or factual support to smear Defendants with allegations of criminal

activity—*i.e.*, mail fraud, wire fraud, and, most astoundingly, money laundering.[60]

Since Plaintiffs' RICO allegations are predicated on fraud, the Complaint

needed to comply with the requirements for pleading particularity under Fed. R.

---

[59]   Defendants' motion certifies that they provided a copy of the motion and brief
to Plaintiffs prior to filing them, pursuant to Rule 11(c)(2). ECF 18.

[60]   Since Plaintiffs' money laundering allegations are completely dependent on
the allegations of mail or wire fraud, the Court does not separately address the
unreasonableness of that claim.

Civ. P. 9(b). In the Eleventh Circuit, it has been clearly established that fraud claims must contain the following allegations: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir.1997)). Plaintiffs' Complaint does not even come close to satisfying any of those requirements. As Plaintiffs' counsel readily admitted during the Hearing, Plaintiffs are unaware of even a single fraudulent statement, document, or misrepresentation made by Defendants in the underlying ADA cases or at any other time.

The Complaint generally asserts that Defendants bring ADA actions "based on false allegations of disability, injury, and standing to collect quick settlements."[61] In alleging that Defendants' actions constitute mail and wire fraud, the Complaint asserts that Defendants "delivered or caused delivery of various receipts, reports, signatures, verifications, declarations, complaints, discovery, correspondence, and other documents containing false information ("Sham

---

[61]   ECF 1, ¶ 22.

Documents").[62] It then states that Defendants used these Sham Documents to make "false ADA complaints."[63] However, Plaintiffs do not (and cannot) identify what, exactly, was false in any of the Defendants' filings.

Plaintiffs' counsel acknowledged during the Hearing that he has no reason to believe that the complainants in the underlying ADA lawsuits are not disabled. Nor does he contest the fact that his clients (the defendants in the underlying ADA lawsuits) were, indeed, in violation of the ADA.[64] Most disturbingly, Plaintiffs' counsel had evidence that the bases for the underlying ADA cases were *not* fraudulent months before he filed this action. In *Holt v. Ghandi*, a case where Plaintiffs' counsel here served as defense counsel for his client, Ghandi, counsel received in initial disclosures receipts of Holt's visits to the property at issue, which serve as the basis for Holt's ADA claims against Ghandi.[65] Plaintiffs' counsel also received an affidavit explaining Holt's disability.[66] Additionally, emails attached to the Complaint in this case make clear that Ghandi, was, in fact, in

---

[62]   *Id.* ¶ 102.

[63]   *Id.* ¶ 104.

[64]   ECF 41 (Hr'g Tr.), 13:06–13, 14:07–11, 15:23–24.

[65]   ECF 18-1, at 7 (citing ECF 18-3, at 96–98).

[66]   ECF 18-1, at 6–7 (citing ECF 18-3, at 99–102).

violation of the ADA and undertook repairs to bring the property into compliance

before entering into a settlement.[67]

Nevertheless, the Complaint alleges that, "[u]pon information and belief,"

the allegations made in *Holt v. Ghandi* were false.[68] How so? Plaintiffs' counsel

cannot answer this question:

> THE COURT: Do you have any Eleventh Circuit
> authority that provides you with a plausible claim for
> relief?
>
> MR. ELKHALIL: I'm not ready to answer this question
> at this time, Your Honor.
>
> THE COURT: Well, you should have been ready when
> you filed the complaint.
>
> MR. ELKHALIL: We are. We are. And we have, but right
> off the top of my head right now, Your Honor, I cannot
> cite any authority or, you know, facts.[69]

Plaintiffs' counsel has not provided the Court with any facts or law demonstrating

that the allegations in *Holt v. Ghandi* were false. No reasonably competent attorney

could conclude that he had a reasonable chance of success based on the

information known and available to him at the time of filing. *Reaid v. Wilson*, No.

---

[67]   ECF 1-1, at 175–76, 182.

[68]   ECF 1, ¶ 36.

[69]   ECF 41 (Hr'g Tr.), 10:20–11:3.

4:19-CV-0154-MHC, 2019 WL 9607734, at *3 (N.D. Ga. Dec. 17, 2019) ("A legal claim is frivolous if no reasonably competent attorney could conclude that it has any 'reasonable chance of success' or is a reasonable argument to change existing law.") (quoting *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010)).

Furthermore, the Court is deeply concerned by Plaintiffs' counsel's actions regarding their former client, PQV. It appears that Plaintiffs' counsel did not provide a copy of the Complaint to PQV or otherwise verify the allegations regarding PQV therein prior to initiating this action.[70] Defendants provided declarations from PQV's current counsel, Richard Jaffe, and PQV's manager, Tommy Vuong, reflecting their surprise at the contents and filing of the Complaint.[71] Vuong's declaration states that if he had seen the Complaint before it was filed, he would not have authorized the inclusion of PQV because the Complaint lacked evidentiary support and it "contained many allegations in PQV's name that [he] know[s] to be false," including the allegations that the

---

[70]   ECF 18-1, at 5–6.

[71]   ECF 18-3, at 49–54 (Jaffe Decl.), ¶ 8 ("I was unaware of the claims made in [this lawsuit] until several weeks after it was filed."); *Id.* at 55–59 (Vuong Decl.), ¶ 8 ("No one from the Elkhalil law firm obtained PQV's approval concerning the contents of [this] lawsuit on my company's behalf before it was filed.").

plaintiff in the underlying ADA action against PQV (Futch) is not disabled and was not a customer.[72] Similarly, Jaffe's declaration states that Plaintiffs' counsel never requested from him copies of documents or evidence that had been gathered during the ADA litigation against PQV.[73]

Defendants also provided a copy of an email from Jaffe to Plaintiffs' counsel on August 20, 2019, stating that PQV has never claimed that Futch "is not disabled, that he is faking or exaggerating his disability, nor did they consent to making such claims."[74] In the email, Jaffe asks Plaintiffs' counsel to withdraw PQV from the lawsuit "immediately."[75] However, Plaintiffs' counsel did not withdraw PQV; instead, Jaffe had to enter a notice of appearance in this case and file a notice of voluntary dismissal with prejudice on PQV's behalf.[76]

Plaintiffs' counsel do not deny that they failed to provide a copy of the Complaint to PQV before it was filed, nor do they claim that they otherwise verified the allegations regarding PQV beforehand. Their response simply states

---

[72]  *Id.* at 55–59 (Vuong Decl.), ¶¶ 9–16.

[73]  *Id.* at 49–54 (Jaffe Decl.), ¶ 14.

[74]  *Id.* at 43.

[75]  *Id.*

[76]  ECF 8; ECF 9; ECF 18-3, at 49–54 (Jaffe Decl.), ¶ 18.

that PQV initially agreed to be a plaintiff in the action.[77] Plaintiffs' counsel's response to Defendants' accusations are confounding. They seem to believe that, because PQV initially agreed to participate in the lawsuit, they were under no obligation, professional or otherwise, to provide a copy of the draft Complaint to PQV, to verify its allegations, or to otherwise investigate the underlying ADA litigation against PQV before bringing such serious, criminal-tinged allegations against Defendants. Plaintiffs' counsel's response is indicative of the reckless manner in which they have conducted this entire case.

The Court finds that Plaintiffs' counsel violated Rule 11 by filing this action without any factual support for their fraud allegations or any viable theory of relief. While the Court, unfortunately, cannot undo the damage done to Defendants' reputation, it finds that it is certainly appropriate to sanction Plaintiffs' counsel for their conduct. The sanctions to be imposed are outlined *infra* in the Conclusion of this Order.

## V.     MISCELLANEOUS MOTIONS

### a.     Motions to Amend the Complaint

On October 31, 2019, Plaintiffs filed their first motion to amend the complaint to add plaintiffs Moreland, Inc. (Moreland) and Atlanta Bay Breeze, Inc.

---

[77]   ECF 22, at 22.

(ABB).[78] Plaintiffs alleged that the proposed plaintiffs had previously been sued by Ehrlich for ADA violations that resulted in consent decrees.[79]  Plaintiffs did not attach a proposed amended complaint for the Court's review.

On November 12, 2019, Plaintiffs filed a Notice of Voluntary Dismissal with Prejudice for proposed plaintiff Moreland, Inc.[80] That same day, they filed a second motion for leave to amend the complaint.[81] The second motion seeks to remove proposed plaintiff Moreland, add proposed plaintiff ABB, and add additional state law claims against Ehrlich and The Law Office.[82] The proposed additional claims include extortion, bribery, influencing witnesses, and tortious interference with existing contractual relations.[83] In support of this motion, Plaintiffs filed an Amended Complaint that seemingly is to be read in conjunction with the original Complaint as it does not replead the RICO allegations, but rather begins where the original Complaint left off and adds state law tort claims.[84]

---

[78]   ECF 23.

[79]   *Id.* at 3–4.

[80]   ECF 31. Plaintiffs allege that Moreland, Inc. withdrew after being contacted by Ehrlich. *Id.* at 2. This issue was addressed during the Hearing.

[81]   ECF 33.

[82]   *Id.*

[83]   *Id.* at 2.

[84]   ECF 33-1.

### i.   Legal Standard

Pursuant to Fed. R. Civ. P. 15(a), a party may amend its complaint only by leave of court or with written consent of the adverse party when it has been more than 21 days following service of the responsive pleading or motion. "Rule 15(a) gives district courts 'extensive discretion' to decide whether or not to allow a party to amend a complaint." *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (quoting *Hargett v. Valley Fed. Sav. Bank,* 60 F.3d 754, 761 (11th Cir. 1995)).

> Ordinarily, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," *Foman v. Davis*, 371 U.S. 178, 182 [ ] (1962), leave to amend "should be freely given," Fed. R. Civ. P. 15(a). Under *Foman*, however, a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile. *Foman*, 371 U.S. at 182 [ ]. "This court has found that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999).

*Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004).

### ii.   Analysis

The Court finds that Plaintiffs' motions to amend should be denied as futile. They do not add any factual allegations to support the three RICO causes of action. Accordingly, they do not alter the Court's conclusion that Plaintiffs have failed to state a claim for relief under the RICO statute. Were the Court to grant Plaintiffs'

motions to amend, the only remaining claims would be the state tort-law claims. There would not be supplemental jurisdiction over those claims, even assuming such claims could withstanding a motion to dismiss, since jurisdiction in this action is premised on federal question jurisdiction. Moreover, even if diversity jurisdiction existed, the decision to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over pendent state law claims is solely within the discretion of the district court. The Eleventh Circuit has "encouraged district courts to dismiss any remaining state law claims when, as here, the federal claims have been dismissed prior to trial." *Raney*, 370 F.3d at 1088–89 (citations omitted).

Accordingly, the Court **DENIES** Plaintiffs' motions to amend the Complaint.

### b.    Motion for Class Certification

Plaintiffs' motion for class certification is premature. Under the local rules, a plaintiff normally must move for class certification within 90 days after the Complaint is filed. LR 23.1(B), NDGa. However, if a defendant files a motion to dismiss, "the plaintiff shall move for a determination under Fed. R. Civ. P. 23(c)(1) within thirty (30) days after all defendants have filed an answer to the complaint." *Id.* Defendants have not yet answered but Plaintiffs' counsel thought it appropriate to move for class certification anyway.

Since the Court is granting Defendants' motion to dismiss, Plaintiffs' motion for class certification is **DENIED AS MOOT**.

## VI.   CONCLUSION

The Court **GRANTS** Defendants' motion to dismiss [ECF 10]; **DENIES AS MOOT** Defendants' motion to disqualify Plaintiffs' counsel [ECF 11]; and, **GRANTS** Defendants' unopposed motion to strike Plaintiffs' supplemental response [ECF 29]. The Court **DENIES** Plaintiffs' motions to amend the Complaint [ECF 23; ECF 33]; and, **DENIES AS MOOT** Plaintiffs' motion for class certification [ECF 24].

Finally, the Court **GRANTS** Defendants' motion for sanctions [ECF 18]. The Court awards monetary sanctions in the form of attorneys' fees and expenses incurred by Defendants in this action. Defendants are **INSTRUCTED** to file with the Court declarations and other materials in support of their claim for legal fees and expenses stemming from Plaintiffs' Rule 11 violations within 21 days after the entry of this Order. Plaintiffs may object to Defendants' submissions within 14 days after the submissions are filed. To be clear, the monetary sanctions awarded shall be paid by Plaintiffs' counsel or Plaintiffs' law firm and shall not be passed on to Plaintiffs themselves.

The Court also finds that non-monetary sanctions are appropriate. It believes that Plaintiffs' counsel would benefit from additional continuing legal education (CLE). Therefore, it **ORDERS** Plaintiffs' counsel to attend an additional four hours of CLE training on federal practice and procedure. This must be in addition to the twelve hours already mandated by the Georgia Bar. The CLEs must be completed within one-year of the issuance of this Order and may be completed remotely. Plaintiffs' counsel shall submit proof of compliance with these CLE requirements to the Court.[85]

   **SO ORDERED** this the 21st day of September 2020.

_____
Steven D. Grimberg
United States District Court Judge

---

[85] It is not readily apparent to the Court how much (if any) responsibility for these Rule 11 sanctions should be undertaken by attorney Carter.  Therefore, the Court will entertain any motion with a supporting affidavit to relieve attorney Carter of the sanctions imposed herein.